MATTHEW C. HELLAND (State Bar No. 250451)
helland@nka.com
ADAM W. HANSEN (State Bar No. 264241)
ahansen@nka.com
NICHOLS KASTER, LLP
One Embarcadero Center, Suite 720
San Francisco, CA 94111
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Attorneys for Plaintiff ADAM ROSH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM ROSH, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>                Plaintiff,<br><br>        vs.<br><br>INDEED, INC.,<br><br>                Defendant. | Case No. 5:13-cv-03751-RMW<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND NAMED PLAINTIFF ENHANCEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  September 5, 2014<br>Time:  9:00 a.m.<br>Courtroom: 6 (Fourth Floor)<br>Judge:  Honorable Ronald M. Whyte |

C-13-03751 RMW

1    TO THE COURT AND ALL INTERESTED PARTIES:

2    PLEASE TAKE NOTICE that on September 5, 2014, at 9:00 a.m. or as soon thereafter as

3    counsel may be heard, in the Courtroom of the Honorable Ronald M. Whyte, United States

4    District Court for the Northern District of California, located at 280 South First Street, San Jose,

5    California, Plaintiff Adam Rosh (herein "Plaintiff") will and hereby does move the Court for an

6    order approving the proposed attorneys' fees and costs.  Specifically, (a) approve the calculation

7    metric for determination of Class Counsel's attorneys' fees; (b) approve Class Counsel's requested

8    costs of $10,000; and (c) approve a $1,000 Named Plaintiff Enhancement.

9    Plaintiff makes this motion on the grounds that the proposed settlement is fair and

10   reasonable and that the attorney's fees sought are also fair and reasonable.  This Motion is based

11   upon this Notice of Joint Motion and Joint Motion for Attorneys' Fees, the Memorandum of

12   Points and Authorities in Support Thereof, the Declaration of Matthew C. Helland, Esq. in support

13   thereof, the complete files and records in the above-captioned matter, and such additional matters

14   as the Court may consider.

15

16   Date:  August 1, 2014                                   **NICHOLS KASTER, LLP**

17

18                                                           By:_____/s/ Matthew C. Helland_____

19                                                           Attorneys for Plaintiff ADAM ROSH

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

II.  BACKGROUND ........................................................................................................ 1

    A.   Background and Procedural History ............................................................ 1

    B.   Overview of Claims and Defenses ............................................................... 2

    C.   Class Counsel's Qualifications and Efforts in this Case ............................... 4

    D.   Terms of the Proposed Settlement ............................................................... 6

III. ARGUMENT ............................................................................................................ 8

    A.   The Court Should Approve The Requested Fees And Costs .......................... 8

        i.    The Court should use the common fund doctrine to award attorney's fees ......... 9

        ii.   The Court should approve the request of 25% in attorneys' fees ...................... 11

            a.   Quality of Counsel ............................................................... 12

            b.   Benefits Obtained for the Class ............................................. 13

            c.   Complexity of the Issues ...................................................... 14

            d.   Risk of Nonpayment ............................................................. 14

        iii.  The Lodestar Cross Check Confirms That The Fee Request is Reasonable. ....... 15

        iv.   The Court should approve requested costs .......................................... 16

    B.   The Court Should Approve The Named Plaintiff Enhancement .................... 17

IV.  CONLCUSION ........................................................................................................ 18

# TABLE OF AUTHORITIES

**CASES**

*Aguilera v. Prospect Mortgage, LLC,*
    2013 WL 4779179 (C.D. Cal. Sept. 5, 2013)...............................................................4, 12

*Aldrich v. Prospect Mortgage, LLC,*
    2013 WL 5506676 (N.D. Cal. Oct. 3, 2013)...............................................................4, 12

*Blum v. Stenson,*
    465 U.S. 886 (1984) .....................................................................................................9, 11

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) .............................................................................................................9

*Central R.R. & Banking Co. v. Pettus,*
    113 U.S. 116 (1885) .............................................................................................................9

*Cervantez v. Celestica Copr.,*
    No. 07-729 (C.D. Cal. July 30, 2008) ...............................................................................12

*Chu v. Wells Fargo Investments, LLC,*
    2011 WL 672645 (N.D. Cal. 2011)....................................................................................17

*de Mira v. Heartland Employment Service, LLC,*
    2014 WL 1026282 (N.D. Cal. Mar. 13, 2014) ..............................................................15-16

*Febus v. Guardian First Funding Grp., LLC,*
    870 F. Supp. 2d 337 (S.D.N.Y. 2012)................................................................................12

*Fischel v. Equitable Life Assurance Soc'y,*
    307 F.3d 997 (9th Cir. 2002)................................................................................................9

*Foster v. Nationwide Mut. Ins. Co.*,

    710 F.3d 640 (6th Cir. 2013) ................................................................................. 5

*Glendale City Employees' Ass'n, Inc. v. City of Glendale*,

    15 Cal.3d 328 (Cal. 1975) ..................................................................................... 9

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) ............................................................................. 10

*Harris v. Marhoefer*,

    24 F.3d 16 (9th Cir. 1994) ................................................................................... 17

*Henry v. Quicken Loans, Inc.*,

    698 F.3d 897 (6th Cir. 2012) .......................................................................... 5, 14

*Hensley v. Eckerhart*,

    461 U.S. 424 (1983) ............................................................................................ 10

*Hoffman v. Constr. Protective Services, Inc.*,

    No. EDCV 03-01006-VAP (SGLx), 2006 WL 6105638 (C.D. Cal. Aug. 31, 2006) ....... 16

*Hopkins v. Stryker Sales Corp.*,

    2013 WL 496358 (N.D. Cal, Feb. 6, 2013) ......................................................... 15

*Hopson v. Hanesbrands, Inc.*,

    2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ........................................................ 17

*In re Continental Illinois Sec. Litig.*,

    962 F.2d 566 (7th Cir. 1992) ........................................................................ 10-11

*In re Mego Fin. Corp. Sec. Litig.*,

    213 F.3d 454 (9th Cir. 2000) .............................................................................. 17

C-13-03751 RMW

*In re Quintus Securities Litigation*,

     148 F. Supp. 2d 967 (N.D. Cal. 2001) ........................................................................ 11

*In re TD Ameritrade Account Holder Litig.*,

     2011 WL 40179226 (N.D. Cal. Sept. 13, 2011)...................................................... 17

*In re Washington Public Power Supply System Sec. Litig. ("WPPSS")*,

     19 F.3d 1291 (9th Cir. 1994)................................................................................... 16

*Kasten v. Saint-Gobain Performance Plastics Corp.*,

     131 S.Ct. 1325 (2011) .............................................................................................. 5

*Morgansetein v. Esber*,

     768 F. Supp. 725 (C.D. Cal. 1991) ........................................................................ 9

*Paul, Johnson, Alston & Hunt v. Graulty*,

     886 F.2d 268 (9th Cir. 1989)................................................................................8-11

*Pierce v. Rosetta Stone, Ltd.*,

     2013 WL 5402120 (N.D. Cal. Sept. 26, 2013)...................................................... 17

*Sibley v. Sprint Nextel Inc*,

     Case No. 08–2063–KHV (D. Kan. 2008) .............................................................. 4

*Six Mexican Workers v. Ariz. Citrus Growers*,

     904 F.2d 1301 (9th Cir. 1990)................................................................................8-9

*Staton v. Boeing Co.*,

     327 F.3d 938 (9th Cir. 2003)................................................................................... 9

*Swedish Hosp. Corp. v. Shalala*,

     1 F.3d 1261 (D.C. Cir. 1993)................................................................................... 9

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ................................................................. 17

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)...............................................................8, 15-16

*Zucker v. Occidental Petroleum Corp.*,
  192 F.3d 1323 (9th Cir. 1999)................................................................. 13

**STATUTES AND RULES**

Fed. R. Civ. P. 23 ................................................................................passim

Fed. R. Civ. P. 23(h)................................................................................ 8

29 C.F.R. § 541.601(a) .............................................................................. 3

29 C.F.R. § 779.412 .................................................................................. 3

29 U.S.C. § 216(b) ................................................................................. 10

Cal. Code Regs. tit. 8, § 11040(3)(D) ........................................................ 3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR ATTORNEYS' FEES

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.        INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Adam Rosh ("Plaintiff") brought this putative collective action on behalf of himself and others similarly situated.  He alleged that Indeed, Inc. ("Defendant") misclassified him and other Account Executives as "exempt" employees under the Fair Labor Standards Act ("FLSA"), and that as a result he and other of Defendant's current and former employees were not paid all of the overtime wages that they were due.  He sought unpaid overtime wage premiums as well as other remedies.  Defendant denied any wrongdoing or liability in this matter.  The parties engaged in a substantial investigation and exchanged relevant information.  Following those exchanges, they engaged a mediator specializing in class and collective wage and hour cases and reached a settlement.  The parties submitted their joint motion for settlement approval to the court (ECF No. 34) along with their stipulated settlement (ECF No. 35) and Plaintiff now moves for an award of attorneys' fees in the amount of 25% of the final settlement amount, as well as $10,000 in costs.  He also requests approval of a $1,000 Named Plaintiff enhancement.

The settlement provides for a maximum settlement amount of $900,000, and each class member will be eligible to receive significant monetary recovery—approximately $1,500 per class member on average based on the most recent data provided.  Although the maximum settlement payment is $900,000, Class Counsel is only seeking fees equal to 25% of the amount actually paid out by Defendant, which will be determined after the opt-in period runs.  As described in the Parties' joint motion for settlement approval, ECF No. 34 p. 9, the parties will advise the court of the completion of the notice process and request dismissal via stipulation, unless the Court requires an additional hearing at that time.

## II.        BACKGROUND

### A.        Background and Procedural History

On August 13, 2013, Plaintiff Adam Rosh filed this case as putative class and collective action alleging that Defendant has misclassified its Account Executives as "exempt" employees, *i.e.*, employees who are exempt from the overtime and other requirements of the FLSA and relevant state laws.  Defendant denies Plaintiff's allegations and contends that it properly

classified Account Executives as exempt and compensated these Account Executives properly. On October 4, 2013, Defendant filed its answer denying all material allegations asserted in the complaint.

On December 6, 2013, the parties stipulated to a stay of Court proceedings and postponed formal discovery in order to pursue mediation.  The parties conducted a lengthy mediation session on March 13, 2014, with the assistance of David Rotman, Esq., a professional mediator who specializes in wage-and-hour cases.  At the conclusion of the mediation session, the parties executed a term sheet agreement, which provided the foundation for the stipulated settlement.  On July 11, 2014 the Parties submitted a Joint Motion for Settlement Approval (ECF No. 34) and a Stipulation regarding the settlement.  (ECF No. 35.)  Plaintiffs now submit their petition for fees and costs in this matter.

### B.    Overview of Claims and Defenses

Although the parties' motion practice was limited, the absence of contested motions does not mean that the parties agreed regarding the facts and the law at issue in this case.  As set forth in the Complaint, Plaintiff contends that Defendant violated the federal Fair Labor Standards Act ("FLSA") and state labor laws by allegedly misclassifying as exempt from overtime pay current and former employees in the Account Executive position.  Plaintiff contends that Account Executives did not qualify as non-exempt employees because Account Executives primarily sell listings on Defendant's website and thus do not qualify for the administrative exemption to the overtime pay requirements.  Plaintiff supports his position by citing Defendant's job description, which says:  "Account Executives are responsible for generating new business and growing existing accounts in a highly-productive, inside sales environment," and their responsibilities include "[s]ell[ing] pay-per-click advertising (PPC) services to small to medium sized employers," and "[d]evelop[ing] account relationships and clos[ing] sales quickly."

Defendant disputes Plaintiff's allegation that Account Executives were misclassified as exempt employees.  The company asserts that Account Executives meet the qualifications for the administrative exemption under applicable regulations and Department of Labor guidance.  Specifically, Defendant states that the current and former Account Executives primarily perform

administrative tasks, such as researching and growing new business, managing client accounts, developing budgets to meet a client's expectations, and exercising discretion in the pricing and promotion of services.   Defendant also asserts that Account Executives manage a significant portion of Defendant's business and bind the Company by their actions without any need for supervisor approval.   Defendant asserts that these job duties qualify Account Executives as exempt administrative employees regardless of whether Account Executives spend limited time on non-exempt sales tasks, the Account Executives are properly classified as exempt and Plaintiff's claims for overtime pay and other remedies are unfounded.   Defendant also asserts that certain class members earned sufficient compensation to qualify for the FLSA's highly compensated employee exemption under 29 C.F.R. § 541.601(a).   Alternatively, Defendant contends that even if Plaintiff could establish that he and others were primarily engaged in sales, then he and these others would be exempt under the pertinent salesperson exemptions, *see* 29 C.F.R. § 779.412; Cal. Code Regs. tit. 8, § 11040(3)(D).

Defendant asserts that nearly all putative class members are subject to valid, enforceable arbitration claims.   Defendant also contends that, even if this matter proceeded in court, Plaintiff would face barriers achieving class and collective certification because of individualized issues related to an Account Executive's seniority, diligence and work efficiency, the number, size, and type of accounts managed, assigned geographic region, supervisory and training responsibilities, and any overtime hours actually worked.

Finally, Defendant contends that even if a class was certified and liability established, any class-wide damages would be extremely limited because the putative class members did not work any meaningful amount of overtime.   The company has supported this position with the declarations of twenty-seven Account Executives who reported working very little, if any, overtime, an analysis of the time-stamped task entry records of Plaintiff, and an analysis of a randomly selected group of Account Executives.

As laid out above, the parties sharply disputed the crucial facts and legal issues in this case. There was significant risk to each side, and the parties recognized that litigating this dispute through conditional certification and summary judgment and trial would potentially be extremely

costly both in terms of attorney time and resources, and in terms of the risk the parties subjected themselves to.  Despite the differences in the parties' view of the applicable law and facts with regard to whether Plaintiff and the putative collective were properly classified, the parties negotiated the significant settlement currently pending before the Court.

### C.   Class Counsel's Qualifications and Efforts in this Case

Class Counsel is Nichols Kaster, PLLP.  Nichols Kaster is a nationally recognized plaintiffs' firm specializing in, among other things, wage and hour litigation.  (*See* Hansen Decl., ECF No. 34-1; Hansen Decl. Exh. A, ECF No. 34-2.) Nichols Kaster has offices in Minnesota and California.  (Hansen Decl. ¶ 2.)  The firm's history dates back to 1974, and Nichols Kaster has focused on representing employees for twenty-six years.  (*Id.*)  The firm's wage and hour division concentrates in class and collective action litigation and has represented over 100,000 employees in such actions.  (*Id.*)

Nichols Kaster has a national reputation for their tenacity in prosecuting class and collective actions, and will continue to litigate those cases even in the face of decertification.  In one recent decertified case, Nichols Kaster filed thirty-seven separate federal district court actions, involving 241 plaintiffs, as well as 188 separate individual arbitrations.  (Helland Decl. ¶ 2.)  In that litigation, Plaintiffs successfully moved to compel individual arbitration over the defendant's objection.  *See Aguilera v. Prospect Mortgage, LLC*, 2013 WL 4779179 (C.D. Cal. Sept. 5, 2013); *Aldrich v. Prospect Mortgage, LLC*, 2013 WL 5506676 (N.D. Cal. Oct. 3, 2013).  In another case Nichols Kaster is actively litigating, the defendant enforced an arbitration agreement with a class action waiver.  (Helland Decl. ¶ 3.)  Instead of abandoning the claims, Nichols Kaster filed over 85 individual arbitration demands and litigated five of those cases through a full arbitration hearing.  (*Id.* ¶ 4.)  That litigation is ongoing, and Nichols Kaster anticipates filing as many as eighty additional arbitration demands. (*Id.*)

In the last three years, Nichols Kaster has tried three FLSA collective actions to verdict.  (Helland Decl. ¶ 5.)  The firm is currently sole class counsel, representing a class of over 30,000 employees, in *Sibley v. Sprint Nextel Inc,* Case No. 08–2063–KHV (D. Kan. 2008).  (*Id.*)  *Sibley* involves alleged damages of well over $170,000,000, and was set for trial in June of this year until

the court appointed a special master to resolve several key motions.  (*Id.*)  Recently, Nichols Kaster prevailed at the United States Supreme Court in an important case involving retaliation under the FLSA.  *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325 (2011).  This fall, Class Counsel of record in this case will argue the firm's second FLSA case at the United States Supreme Court.  (Helland Decl. ¶ 6.)

The attorneys on the file include a partner (Helland) who has been practicing law for over eight years as well as an associate (Hansen) who has been practicing law for six years. (Helland Decl. ¶ 7.) Both attorneys focus substantially on wage and hour law.  (*Id.*)    Class Counsel believes that, in their experience with cases of this type, especially considering the fact that the parties were able to resolve the dispute early in the litigation, that they reached an agreement that is fair to Plaintiff and the putative Collective.

Dockets in large class actions like this one are often replete with contested motions involving complicated procedural issues (*e.g.*, FLSA conditional certification, Rule 23 class certification, FLSA decertification), costly and time consuming discovery issues (*e.g.*, motions to compel electronically stored information, expert discovery, protective orders), and extensive motion practice on the merits of the parties' claims and defenses (*e.g.*, motions to dismiss, cross motions for summary judgment).  And in Class Counsel's experience, more and more class action cases involving wage and hour claims are being tried and appealed.  *See, e.g.*, *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012) (plaintiffs represented by Nichols Kaster); *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640 (6th Cir. 2013) (same).

Here, the parties' motion practice has been limited, but the relative lack of contested motions does not mean that the parties agreed on the factual and legal issues involved in this case, nor does it mean that both parties have not gone through substantial efforts to litigate this case. Class Counsel thoroughly investigated Plaintiff and the putative Collective's claims as well as Defendant's defenses.   (Helland Decl. ¶ 8.)   Class Counsel engaged in significant pre-suit investigation, which does not even appear in counsel's billing records.  (*Id.*)  Class Counsel's work included interviewing potential opt-in Plaintiffs and, when Defendant appeared willing, mediated the case early in the process to obtain fair and speedy relief to their client.  (*Id.*)  Class

Counsel recorded over 240 hours on this case through mid-July, billing over $70,000.  Class Counsel has also incurred over $10,000 in unreimbursed out of pocket expenses.  (Helland Decl. ¶ 9; Exh. A.)  Class Counsel believes that the fees and costs requested herein are reasonable in light of their efforts, the significant relief available to those Class Members who want it, and in light of the risks undertaken by taking this case on a contingency fee-basis.

**D.      Terms of the Proposed Settlement**

The proposed settlement calls for the certification for settlement purposes of a national collective action consisting of all individuals who were employed by Defendant as Account Executives anywhere in the United States during the "Class Period," which is defined as the time period from March 13, 2011, through the date on which the Court approves the settlement.  (*See* Stipulation Re: Settlement of Collective Action ("Stipulation"), ECF No. 35, ¶¶ 1.1.2; 1.1.7; 2.1.3.)

Under the terms of the Stipulation, each Class Member will receive a notice which will provide each recipient with the approximate amount he or she is entitled to claim under the settlement.   Per the proposed settlement, the parties will retain the professional claims administration firm of Rust Consulting, Inc. (the "Claims Administrator") to perform the notice and claims administration procedures in this matter.  (ECF No. 35 at ¶ 1.1.3.)  The Class Notice will be sent, postage pre-paid, via first class mail to the last known addresses of each class member.  (*Id.* at ¶ 2.4.1.)

As explained thoroughly in the Class Notice, this is an opt-in settlement, and class members shall be excluded from the Class and settlement (and not subject to any release or the judgment) unless they affirmatively "opt in" to the settlement class.  ( ECF No. 35 at ¶ 2.5.1.) Only those class members who timely "opt in" by completing, executing, and mailing an Opt In and Release Form (attached to Exhibit 2 as Form A), will be subject to the Judgment and its associated release.  (*Id.* at ¶¶ 2.5.1 & 2.7.1.)

Class members who timely and properly submit a qualifying Opt-In and Release Form will become Participating Claimants, and only they will receive their individualized settlement sums. (ECF No. 35 at ¶¶ 1.1.16; 1.1.23; 1.1.28; 1.1.34; 2.6.1.)  To the extent a class member does not

become a Participating Claimant, *i.e.*, he or she does not submit a qualifying Opt In and Release Form, then any settlement funds that would have otherwise been paid to him or her will remain the property of Defendant and not be paid.  (*Id.* at ¶¶ 2.1.3 & 2.6.2.)  Importantly, this is *not* a Rule 23 claims made settlement.  Those who do not join the settlement will release nothing.  The absence of a Rule 23 class was essential to Class Counsel's willingness to settle this case on the terms presented.  (Helland Decl. ¶ 10.)

Because the settlement sums received by Participating Claimants will represent a payment in settlement of claims for unpaid wages and associated remedies, the parties have structured the agreement so that the amount of each class member's potential settlement payment will vary according to his or her length of service during the relevant time period.   Specifically, a Participating Claimant's settlement sum shall be calculated on a *pro rata* basis pursuant to a formula that takes into account (a) the number of workweeks that the class member worked as an Account Executive for Defendant during the pertinent period; (b) the class member's final salary rate during the pertinent period; (c) whether the class member worked in California and whether he or she signed an agreement releasing his or her rights under California law; and (d) the type of arbitration agreement, if any, to which the class member is subject.  ( ECF No. 35 at ¶¶ 1.1.27 & 1.1.35.)

The Class Notice will advise class members of the pertinent formula and the notice will be individualized to advise each class member of his or her specific settlement sum so that he or she can best evaluate the settlement and its financial implications.  ( ECF No. 35 at Exhibit 2.)

The Maximum Settlement Amount, *i.e.*, the maximum amount that Defendant shall pay under the terms of the Stipulation, is $900,000.   The specific components of this Maximum Settlement Amount are:  (a) the Maximum Amount for Payments to Participating Claimants, which will be $644,000; (b) Maximum Amount for Attorney Fee Payments, which will be $225,000 (25% of the Maximum Settlement Amount); (c) all allowable litigation costs and associated litigation expenses, which shall be in the maximum amount of $10,000; (d) claims administration costs, which are estimated to be in the amount of $20,000; and (e) an enhancement

1   payment to Plaintiff Adam Rosh, which will be in the total and maximum amount of $1,000.

2   (ECF No. 35 at ¶ 1.1.16.)

3        With regard to attorney fees, the maximum fee award is twenty-five percent (25%) of the

4   Maximum Settlement Amount or up to $225,000 in fees.   (*Id*. at ¶ 1.1.18.)   However, Class

5   Counsel have agreed that they will seek only a percentage of this maximum amount; specifically,

6   once the notice and opt in process is complete and the percentage of settlement funds claimed by

7   class members is clear (*i.e.*, the claims percentage or claims rate), Class Counsel will seek to

8   recover only the same percentage of the maximum fee amount.   (*Id.*)   Defendant has agreed to a

9   standard "stand-still" agreement, *i.e.*, it has agreed not to oppose this fee award, which is subject

10  to Court approval.   (*See id.* at ¶¶ 2.8.1. & 2.11.2.)   With regard to the enhancement award, the

11  Stipulation calls for an additional payment of $1,000 to Plaintiff Adam Rosh, again subject to

12  Court approval.   (*Id.* at ¶ 2.8.2.)   This payment is in compensation for Plaintiff's efforts in this

13  case as well as his execution of a general release.

14  **III.   ARGUMENT**

15       **A.      The Court Should Approve The Requested Fees And Costs**

16       Under Rule 23(h) of the Federal Rules of Civil Procedure, "the court may award

17  reasonable attorneys' fees and non-taxable costs that are authorized by law or by the parties'

18  agreement."   Fed. R. Civ. P. 23(h).   In its discretion, the court may choose to award reasonable

19  attorneys' fees based upon the percentage of the fund or lodestar methods.   *Vizcaino v. Microsoft*

20  *Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).   Under the percentage of the fund method, the court

21  calculates the fee award by designating a percentage of the total common fund.   *Six Mexican*

22  *Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).   Under the lodestar

23  method, the court calculates the fee award by multiplying the number of hours reasonably spent by

24  a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks

25  associated with representation.   *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th

26  Cir. 1989).   While the percentage of the fund method is commonly used by courts to award

27  attorneys' fees, the lodestar method may also be used as a cross-reference to assure that the fee

28  award is reasonable.   *Vizcaino*, 290 F.3d at 1047.   Where the settlement creates a fund for the

distribution, the Ninth Circuit recognizes that the "district court has [the] discretion to apply either the lodestar method or the percentage-of-the-fund method." *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002).

> ### i.     The Court should use the common fund doctrine to award attorney's fees

For well over a century, federal and state courts have recognized that when counsel's efforts resulted in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (the United States Supreme Court "has recognized consistently that a litigant or lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) (recognizing common fund doctrines); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (same).

The common fund doctrine rests on the understanding that, in class action litigation, the class members who benefited from the fund without contributing to the attorneys who created it would be unjustly enriched. *Boeing*, 444 U.S. at 478. Thus, courts have endorsed the method of awarding a percentage of the total fund as a fair way to calculate a reasonable fee when contingency fee litigation has produced a common fund. *See, e.g.*, *Blum v. Stenson*, 465 U.S. 886, 900, n.16 (1984); *Six Mexican Workers*, 904 F.2d at 1311 (common fund fee is generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272; *Morgansetein v. Esber*, 768 F. Supp. 725, 728 (C.D. Cal. 1991); *Glendale City Employees' Ass'n, Inc. v. City of Glendale*, 15 Cal.3d 328, 341 n.19 (Cal. 1975).

The percentage of the fund method is appropriate for a number of well-recognized reasons. One of the most important reasons is that the percentage method accomplishes fee spreading in a manner that comports with the legal marketplace, where counsel's success is frequently measured in terms of the results counsel has achieved. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary amount of the victory is often the true measure of [counsel's] success"). By assessing the amount of the fee in terms of the amount

of the benefit conferred on the class, the percentage method "more accurately reflects the economics of litigation practice" which, "given the uncertainties and hazards of litigation, must necessarily be result-oriented." *Id.* (internal quotation marks and citation omitted).

Further, when clients, as here, do not pay an ongoing hourly fee to their counsel, they typically negotiate an agreement in which counsel's fee is based upon a percentage of any recovery. The percentage of the fund approach mirrors this aspect of the market and, accordingly, reflects the fee that would have been negotiated by the class members in advance, had such negotiations been feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation. *See, e.g.*, *Paul, Johnson, Alston & Hunt*, 886 F.2d at 271 ("it is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit"); *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (in a common fund case, the object "is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible"). Here, the common fund method is appropriate because Class Counsel has secured a settlement with a common fund of up to $900,000.00, which will be shared by an opt-in class of up to approximately 400 people.

With respect to attorneys' fees, the FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee." 29 U.S.C. § 216(b). In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Courts in the Ninth Circuit routinely approve fee awards ranging from 20% to 30% of the maximum settlement amount, with a "benchmark" award of 25% of the settlement fund. *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272-73; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees.").

A common fund is appropriate because Participating Claimants outside of Plaintiff Rosh and early opt-ins do not have formal attorney-client agreements with Class Counsel, and it is

proper that an award of fees should be shared by each class member who receives benefit from this settlement.  The common fund is also appropriate because Class Counsel took this case on a contingency basis.  *See, e.g.*, *Blum*, 465 U.S. at 900 n.16.  Because Plaintiffs and Participating Claimants did not pay Class Counsel during the course of this litigation, Class Counsel alone bore the risk that the litigation would be unsuccessful.  Without Plaintiff and Class Counsel's efforts there would be nothing for Participating Claimants to claim.  It is therefore appropriate that an award of attorney's fees would mirror the fee that Class Counsel might be paid in a contingency arrangement negotiated with individual plaintiffs.  *See In re Continental Illinois Sec. Litig.*, 962 F.2d at 572.

Further, Class Counsel will almost certainly recover less than the benchmark 25% of the maximum settlement amount.  In particular, the *maximum* Class Counsel will receive in fees is 25% of the $900,000 maximum settlement amount, but unless the opt in rate is 100%, Class Counsel will receive less.  This is because Class Counsel has agreed to seek the same percentage of the maximum possible fee award as the opt in rate.  (Stipulation at ¶ 1.1.18.)  For example, if Participating Claimants submit qualifying Opt In and Settlement Claim Forms properly claiming seventy percent of the maximum settlement amount ($630,000), then the attorneys' fee payment shall be seventy percent of the maximum (benchmark) fee award, *i.e.*, $157,500, which equates to only 17.5% of the total settlement fund.

### ii.      The Court should approve the request of 25% in attorneys' fees

In the Ninth Circuit, twenty-five percent of the common fund is commonly viewed as a "benchmark for an attorneys' fees award.  *See Paul, Johnson, Alston & Hunt*, 886 F.2d at 272.  A departure from the 25 percent benchmark must be accompanied by a reasonable explanation of why the benchmark is unreasonable under the circumstances.  *In re Quintus Securities Litigation*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001).  The factors to be considered when departing from the 25% benchmark include: "quality of counsel, the benefits obtained for the class, the complexity of the issues, and the risk of nonpayment."  *Id.*  Here, class counsel requests 25% of the eventual opt-in award in fees, which is, at the most, $225,000 in fees.  None of the listed factors warrant a downward departure from the benchmark in this case.

1

a.    Quality of Counsel

2        Class Counsel's experience is outlined above as well as in ECF No. 34-2.  Class Counsel

3   in this matter is Nichols Kaster, PLLP.  As discussed in the previously-filed Declaration of Adam

4   Hansen, Class Counsel are qualified, experienced, and have substantial credentials representing

5   plaintiffs, particularly employees, in class and collective action litigation.  (*See* Hansen Decl ECF

6   No. 34-1.)  Class Counsel has represented numerous classes and collective of plaintiffs, some

7   larger and some smaller than the current putative Collective.  (*Id.*)  Nichols Kaster is well known

8   for vigorously litigating its Plaintiffs' claims.  *See, e.g.*, *Febus v. Guardian First Funding Group,*

9   *LLC,* 870 F. Supp. 2d 337 (S.D.N.Y. 2012) (granting attorney's fees and noting that Nichols

10  Kaster is "a reputable plaintiff-side employment litigation boutique with a nationwide practice and

11  special expertise prosecuting FLSA cases"); *Cervantez v. Celestica Copr.*, No. 07-729 (C.D. Cal.

12  July 30, 2008) (noting Class Counsel "has extensive experience handling class actions . . . .").

13  Likewise, Defendant is represented by the experienced and skilled firm of Munger, Tolles &

14  Olson, LLP, which has a national wage-and-hour collective and class action practice.  The lawyers

15  representing Defendant have extensive experience representing employers in wage-and-hour class

16  and collective actions.  Accordingly, the professional skill and standing of counsel on both sides is

17  substantial and this factor supports approval of the requested fee award.

18        Class Counsel has particularly relevant experience litigating arbitration issues.   In

19  appropriate cases, Class Counsel willingly and enthusiastically takes the hard road to victory in

20  wage and hour litigation, filing scores of individual arbitration and district court cases.  (*See*

21  Helland Decl. ¶¶ 2-4.)   Class Counsel has even compelled individual arbitration over an

22  employer's objections.   *See Aguilera,* 2013 WL 4779179; *Aldrich*, 2013 WL 5506676.

23  Individualized litigation of wage and hour cases can be successful, but it requires the right

24  combination of good facts, good law, and a motivated and willing employee pool.

25        This case, like so many others in recent years, involves threat of individualized arbitration.

26  Class Counsel's experience in this realm should reassure the Court that Class Counsel is not

27  simply waiving the white flag in search of a quick escape from this case.  Class Counsel knows

28  which battles to pick and is ready and willing to engage in a ground war when the facts, law, and

1   class member participation warrant.  For all the reasons outlined in this motion and the parties'

2   motion for settlement approval, Class Counsel firmly believes that this settlement is the best

3   course of action for the FLSA Collective in this case.

4   *b.      Benefits Obtained for the Class*

5           This is a substantial settlement that provides significant value to class members.  The

6   payment of actual and substantial damages to class members is to be contrasted with other cases in

7   which requests for attorneys' fees have been denied or reduced.  For example, in *Zucker v.*

8   *Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999), class counsel requested almost

9   $3,000,000 in fees despite not securing any actual damages payable to class members.  Here, the

10  significant payments that Plaintiffs will receive support the approval of Plaintiffs' attorneys' fees

11  request.  Class Counsel's work resulted in a settlement of $900,000.

12          Participating Claimant's settlement sum shall be calculated on a *pro rata* basis pursuant to

13  a formula that takes into account (a) the number of workweeks that the claimant worked as an

14  Account Executive for Defendant during the claims period; (b) the claimant's final salary rate

15  during the pertinent period; (c) whether the class member worked in California and whether he or

16  she signed an agreement releasing his or her rights under California law; and (d) the type of

17  arbitration agreement, if any, to which the class member is subject.  This formula amounts to, on

18  average, $1,500 per Participating Claimant.

19          This settlement is the best of both worlds for Class Members.  Absent this settlement, the

20  path for individual recovery would have involved complex litigation over arbitration agreements,

21  certification, exemption defenses, and the number of overtime hours worked.  Depending on the

22  outcome of those issues, Class Members may have been forced to prove their cases separately and

23  individually in arbitration.  This settlement agreement preserves that option for any Class Member

24  who wants it.  For Class Members without the appetite of individual or protected litigation, this

25  settlement provides substantial and timely relief.  And as discussed throughout, Class Counsel will

26  only receive payment on those Class Members who decide to opt in and join the settlement.  Class

27  Counsel should be compensated for obtaining that relief.

28

1                       *c.*       *Complexity of the Issues*

2      Wage and Hour class actions are often complex.  This case is no different, and the issues

3 and time spent could have ballooned had the Parties not been able to resolve the case at mediation.

4 Class Counsel should not be punished for its ability to obtain a fair and speedy resolution of the

5 case.  As noted above, there are a significant number of issues that Plaintiff must navigate if he

6 and the putative Collective were to prevail through summary judgment or trial.

7      Particularly, Defendant asserts that Plaintiff falls under the administrative exemption, the

8 highly compensation employee exemption, and pertinent salesperson exemptions of the FLSA and

9 state wage and hour law.  Plaintiff and the putative Collective would also need to address

10 Defendant's claims that class members are subject to valid and enforceable arbitration claims.

11 Further, Defendant cites numerous "individualized" issues that it argues would prevent class and

12 collective certification.  While Plaintiff believes he would prevail on all of the aforementioned

13 issues, these issues demonstrate that the way forward in this litigation would have been complex

14 and rife with potential pratfalls which could result in no recovery for Plaintiff and the putative

15 Collective.

16                       *d.*       *Risk of Nonpayment*

17      Class Counsel bore a significant risk of nonpayment in this case.  Because Class Counsel

18 took the case on a contingency fee arrangement, Class Counsel alone bore the risk of nonpayment.

19 (Helland Decl. ¶ 11.)  Class Counsel took this case and invested in it with the very real possibility

20 of an unfavorable outcome and no fee of any kin, and Class Counsel should be compensated for

21 taking on that risk.  While Plaintiff maintains that he would ultimately prevail in motions to

22 dismiss, conditional FLSA certification, summary judgment, and, if necessary, at trial, Plaintiff

23 recognizes the inherent risk of litigation, particularly in this area of wage and hour law.  *See, e.g.*,

24 *Henry*, 698 F.3d at 897 (after eight years of litigation, affirming jury verdict that mortgage bankers

25 were properly classified as exempt from the overtime pay requirements of the FLSA).  By

26 agreeing to the Settlement, those risks are eliminated and Participating Claimants are ensured of

27 receiving recovery now, as opposed to *possibly* receiving a recovery years from now which may or

28 may not be on as favorable terms as the current settlement agreement.

Collectively, Class Counsel has committed over 240 hours through the course of this litigation, a significant expenditure of time, all of which work was done with no guarantee of compensation. (Helland Decl. ¶¶ 8, 11-12.) Among other things, Counsel participated in the following tasks that were integral to the successful resolution of this case: (1) initial investigation of potential claims; (2) drafting the various initiating documents; (3) interviewing Named Plaintiff as well as numerous other potential opt-in Plaintiffs regarding their claims; (4) efforts during informal discovery and mediation; (5) preparing detailed mediation materials analyzing the facts, law, and damages; (6) preparing for and attending mediation; (7) negotiating the settlement terms post-mediation; (8) performing damage calculations based on data provided by Defendant; and (9) drafting settlement document and the joint motion for approval of the settlement. (*Id.* ¶ 8.) These hours were all reasonably necessary given the breadth of issues in this case, as well as to ensure that Plaintiff's case was zealously prosecuted. (*Id.*) Further, Class Counsel will continue to represent the Plaintiff and opt-ins throughout the settlement administration period as funds and tax documents are disseminated to ensure the documents are mailed in a timely fashion and to answer any potential questions regarding the settlement. (*Id.* ¶ 13.)

### iii. The Lodestar Cross Check Confirms That The Fee Request is Reasonable

As a way to "cross check" the value of services rendered, district courts sometimes calculate the lodestar figure and compare it with the amount requested under the percentage approach. *Vizcaino*, 290 F.3d at 1050 (9th Cir. 2002). "[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonable of a given percentage award." *Id.* (applying the lodestar method as a cross check, and affirming a multiplier of 3.65); *see also de Mira v. Heartland Employment Service, LLC*, 2014 WL 1026282, at *4 (N.D. Cal. Mar. 13, 2014) (observing that courts commonly use the lodestar as a cross-check to the percentage method, and that a 1 to 4 multiplier is commonly found to be appropriate in complex class actions, with a majority in the 1.5-3.0 range); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal, Feb. 6, 2013) (noting that the purpose of the lodestar multiplier is to account for class counsel's risk in contingency fee cases, and approving a multiplier of 2.76, or

30% of the settlement fund).  The lodestar cross check need not be precise; a "rough calculation" of the lodestar is sufficient.  *de Mira*, 2014 WL 1026282, *4.

Courts "routinely enhance[ ] the lodestar to reflect the risk of non-payment in common fund cases."  *In re Washington Public Power Supply System Sec. Litig. ("WPPSS")*, 19 F.3d 1291, 1300 (9th Cir. 1994).  "Attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose."  *Vizcaino*, 290 F.3d at 1051 (affirming a lodestar multiplier of 3.65); d*e Mira*, 2014 WL 1026282, *4 ("The purpose of the multiplier is to account for the risk Class Counsel assumes when they take on contingent-fee cases.")

Here, Class Counsel's fees are over $70,000.  (Helland Decl. ¶ 8.)  Even if 100% of Class Members participate in the settlement, leading to $225,000 in fees, the lodestar multiplier would be approximately 3.2.  This multiplier is warranted, and the Court should approve the potential for $225,000 in fees.  *See Vizcaino*, 290 F.3d at 1051; *de Mira*, 2014 WL at *4.  Because the actual fees paid will be based on the number of claims made, and because Class Counsel will incur substantially more fees during the administration of this settlement, the multiplier will likely end up being much smaller, and even more reasonable.

Class Counsel has significant experience litigating collective actions under the FLSA. They have an excellent reputation in the legal community, and have a reputation for pursuing their cases as far as possible to obtain a favorable result for their clients.  Given Class Counsel's swift resolution of this case, and the payment of real settlement money to Class Members without an overbroad Rule 23 release, the lodestar crosscheck illustrates that Class Counsel's proposed fee award is abundantly reasonable.

### iv.    The Court should approve requested costs

Class Counsel also requests reimbursement of its minimal litigation expenses.  Courts throughout the Ninth Circuit confirm that plaintiffs' counsel in contingency cases may recover reasonable out-of-pocket expenses "that would normally be charged to a fee paying client." *Hoffman v. Constr. Protective Services, Inc.*, No. EDCV 03-01006-VAP (SGLx), 2006 WL 6105638, at *8 (C.D. Cal. Aug. 31, 2006) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.

1994)); *Pierce v. Rosetta Stone, Ltd.*, 2013 WL 5402120, at *6 (N.D. Cal. Sept. 26, 2013) (reimbursement expenses for mediation, postage, legal research fees, filing fees, photocopying costs, messenger and travel costs were reasonable); *In re TD Ameritrade Account Holder Litig.*, 2011 WL 40179226, at *16 (N.D. Cal. Sept. 13, 2011) (reimbursing costs of $27,807.91 comprised of expert costs, filing fees, photocopying, messenger and travel costs was reasonable); *Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645, at *5 (N.D. Cal. 2011) (approving award of plaintiffs' costs of $40,528.08).

Here, Class Counsel requests reimbursement of $10,000 for its out of pocket costs, which is less than the $10,599 it has incurred.  (*See* Helland Decl. Exh. A.) These costs include court fees, mediation, legal research, and postage.  (*See id.*)  The vast majority of these costs ($9,250 out of $10,000) relate to mediation with David Rotman.  (*See id.*)   These costs are eminently reasonable and reimbursement should be allowed.

**B.     The Court Should Approve The Named Plaintiff Enhancement**

Lastly, Plaintiff requests that the Court award a total of $1,000 from the settlement fund as an enhancement payment to the Named Plaintiff, Adam Rosh.  Courts in the Northern District of California have discretion to award enhancement awards to plaintiffs and class representatives in a class action suit.  *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). Courts consider factors including the risk of professional harm due to their public participation. *Chu*, 2011 WL 672645, at *5.   Approved incentive awards are often far more than the $1,000 Class Counsel requests for Plaintiff Rosh.  *Id.* (awarding $10,000 to two plaintiffs); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving enhancement awards of $5,000); *Hopson v. Hanesbrands, Inc.*, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (approving an award of $5,000 to one member of a 217 individual class from a $408,420 settlement fund).

Although this case settled early, an enhancement for Mr. Rosh is appropriate.  He is the lone named plaintiff; without him this lawsuit would not exist and the potential claimants would have no fund from which to claim.  Plaintiff Rosh provided important assistance and aided Class Counsel in investigating, filing, litigating, and resolving this action.  (Helland Decl. ¶ 14.)  In fact,

several potential clients contacted Nichols Kaster during its initial investigation of this case, and others besides Plaintiff Rosh were unwilling to serve as a named Plaintiff.  (*Id.*)  In Class Counsel's experience, employees of start-ups are often hesitant to start a lawsuit against their employer.  (*Id.* ¶ 14.)  That hesitancy bore itself out in this case.  Because Plaintiff Rosh was willing to step up on behalf of his coworkers, and because he executed a general release, a small, $1,000 enhancement is appropriate.

## IV.        CONLCUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion, and approve fees in the amount of 25% of the final settlement amount, costs in the amount of $10,000, and a named plaintiff enhancement of $1,000.

Date:  August 1, 2014                                   **NICHOLS KASTER, LLP**

By:  /s/ Matthew C. Helland

Attorneys for Plaintiff ADAM ROSH